UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERROL MCINTYRE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 09-1821 (ESH) |
| DISTRICT OF COLUMBIA et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Errol McIntyre, a federal prisoner and foreign national, is proceeding in forma pauperis and pro se in this suit under 42 U.S.C. § 1983. Seeking $15 million in damages, as well as declaratory and injunctive relief, he alleges that the defendants failed to inform him of his right to have his consular officer notified of his detention, in violation of Article 36 of the Vienna Convention on Consular Rights ("VCCR"). The matter is now before the Court on a motion to dismiss filed by the United States Department of Justice ("DOJ"). The motion will be granted and the case will be dismissed.

### BACKGROUND

McIntyre alleges that he was never informed of his right to consular notification in connection with his arrest in 1988 by officers of the District of Columbia Metropolitan Police Department or the criminal and deportation proceedings that followed, and that he first learned of his consular notification rights in 2007. *See* Compl. at 5-6. He sued the District of Columbia, the DOJ, the "Immigration Service" — which the Court has construed to be the U.S. Immigration and Customs Enforcement ("ICE"), and Mark Rochen, his former defense counsel.

The District of Columbia filed a motion to dismiss, which the Court granted as conceded after McIntyre failed to submit a timely response as directed by the Court. *See* Order (Dec. 30, 2009). Similarly, ICE filed a motion to dismiss, which the Court granted as conceded after McIntyre did not file a response within the time allowed. *See* Order (June 11, 2010). In addition, Rochen never appeared in the case. Although McIntyre named Rochen as a defendant, he did not provide an address for service of the summons and complaint on him until the case had been pending for nearly six months. *See* Response to Order of the Court (Mar. 4, 2010). Because, as explained more fully below, there would have been no purpose for suing Rochen, the United States Marshal was not directed to effectuate service.

At this point, then, the only defendant before the Court is the DOJ. McIntyre asserts that the federal prosecutors handling his criminal case did not inform him of his right under Article 36 to consular notification. *See* Compl. at 5-6. Although he does not link any specific relief to any specific defendant, the relief he seeks specific to the DOJ is necessarily limited to declaratory relief and damages.[1]

## DISCUSSION

In its entirety, Article 36 of the Vienna Convention states:

"1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

"(a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to

---

[1] Plaintiff also seeks injunctive relief in the form of enforcement of the deportation order, but federal district courts lack jurisdiction "to review matters involving removal proceedings and the execution of removal orders." *See Thomas v. District of Columbia Gov't*, 580 F. Supp. 2d 142, 150 (D.D.C. 2008) (citing 8 U.S.C. § 1252(g)).

> communication with and access to consular officers of the sending State;
>
> "(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;
>
> "(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.
>
> "2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended."

Vienna Convention on Consular Relations, art. 36, Apr. 24, 1963, 21 U.S.T. 77, at 100-101. Whether Article 36 of the VCCR confers a judicially enforceable individual right upon foreign nationals arrested and detained in this country is a question that the Supreme Court has not yet decided. *See Sanchez-Llamas v. Oregon,* 548 U.S. 331, 343 (2006) ("[F]or the purposes of addressing petitioners' claims, we assume, without deciding that Article 36 does grant [petitioners] such rights."); *but see id.* at 371-78 (finding that Article 36 does confer a judicially enforceable individual right) (Breyer, Stevens, Souter and Ginsburg, JJ., dissenting). The Court of Appeals for the District of Columbia Circuit has not decided the issue, but other Circuits are

split on the question. *Compare Jogi v. Voges,* 480 F.3d 822 (7th Cir. 2007) (finding a judicially enforceable individual right cognizable under § 1983) and *Osagiede v. United States,* 543 F.3d 399 (7th Cir. 2008) (reiterating that there is an individual right and finding that it can be raised in criminal proceedings), *with Cornejo v. County of San Diego,* 504 F.3d 853 (9th Cir. 2007) (concluding that "Article 36 does not create judicially enforceable rights") and *Gandara v. Bennett,* 528 F.3d 823, 825 (11th Cir. 2008) ("Although we find the issue a close one with strong arguments on both sides, we ultimately conclude [that Article 36 does not confer judicially enforceable individual rights].").

The issue need not be decided in order to resolve this motion because even assuming that Article 36 confers a judicially enforceable individual right, McIntyre's § 1983 claim against the DOJ does not state a claim upon which relief may be granted. Section 1983 provides a right to seek redress for an injury inflicted by a "person who, under color of any statute . . . of any State or Territory or the District of Columbia" deprives another of his rights, privileges or immunities secured by the Constitution and laws. 42 U.S.C. § 1983. The United States attorneys involved in prosecuting McIntyre did not act under color of any statute of the District of Columbia, but acted as federal officials, under color of federal law. "Section 1983 does not apply to federal officials acting under color of federal law." *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005). Thus, McIntyre's § 1983 claim fails to state a claim upon which relief may be granted and warrants dismissal.

McIntyre's pro se complaint is entitled to liberal construction. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Nonetheless, McIntyre has not identified, and the Court cannot discern, any specific statutory authorization to sue the United States or its agencies for the alleged

violation of rights. As sovereign, the United States and its executive branch agencies are immune from suit except insofar as Congress has expressly waived that sovereign immunity. *Lane v. Pena,* 518 U.S. 187, 192 (1996).

Congress, through the Federal Tort Claims Act ("FTCA"), see 28 U.S.C. §§ 1346, 1402(b), 2401(b), 2671 et seq., has waived the federal government's sovereign immunity with respect to certain claims against the United States for money damages. That waiver, which is co-extensive with the provisions of 28 U.S.C. § 1346, *FDIC v. Meyer,* 510 U.S. 471, 479 (1994), does not sweep so broadly as to encompass any right that may be conferred by Article 36. Section 1346 says that

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

1346(b)(1). The injury alleged in this case is not an injury that arose "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id*. There would be no liability for a private person under the provisions of this treaty; no private person has any duty to a foreign national to advise him of any rights he may have under Article 36 of the VCCR. Thus, the FTCA does not provide a right of action for damages arising from a violation of Article 36.

Nor is a *Bivens*-type action available for an Article 36 claim against the DOJ. In *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), the Supreme Court held that an individual injured by a federal agent's alleged violation of the Fourth Amendment

may bring an action for damages against the agent.  403 U.S. at 397.  However, in *FDIC v. Meyer*, the Supreme Court rejected the extension of *Bivens* to direct actions for damages against federal agencies.  510 U.S. at 484-86.

If, as here, a suit is barred by sovereign immunity, resort to the Declaratory Judgment Act does not cure the impediment.  *Almour v. Pace,* 193 F.2d 699, 701 (D.C. Cir. 1952) ("[L]ack of jurisdiction in the district courts cannot be cured by resort to the Declaratory Judgment or Administrative Procedure Acts."); *Scinto v. Federal Bureau of Prisons,* 608 F. Supp. 2d 4, 9 n.2 (D.D.C. 2009) ("[T]he Declaratory Judgment Act . . . does not waive the federal government's sovereign immunity."); *see also* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 14 *Fed. Prac. & Proc.* Jurisdiction §3655 (3d ed) ("Resort to the Declaratory Judgment Act will not cure the defect of a sovereign immunity bar otherwise applicable to a particular piece of litigation against a federal agency or officer.").  Therefore, McIntyre's plea for declaratory relief also fails.  Accordingly, the claims against the DOJ will be dismissed.

The Court never directed the United States Marshal Service to serve process on Rochen, McIntyre's former defense counsel.  To have done so would have been useless because the § 1983 claim fails to state a claim against him.  A criminal defense attorney, whether public or private, does not act under color of state, territorial or District of Columbia law in providing a criminal defense.  *See Polk County v. Dodson,* 454 U.S. 312, 325 (1981) (a public defender does not act under color of law when performing the traditional functions of a criminal defense attorney).  Accordingly, the Court will *sua sponte* dismiss the § 1983 claim against defendant Rochen.  *See* 28 U.S.C. § 1915A (obligating a court to review cases such as this one and dismiss claims that fail to state a claim upon which relief may be granted).  Any other claim McIntyre

has against his former attorney for deficient performance arises under the laws of the District of Columbia, not federal law, and this Court will decline to exercise supplemental jurisdiction over any other intended performance claims against Rochen.  28 U.S.C. § 1367(c)(3).

Accordingly, the DOJ's motion to dismiss will be granted, the claims against Rochen will be dismissed sua sponte, and, because the District of Columbia and the U.S. Immigration and Customs Enforcement have already been dismissed, this case will be dismissed with prejudice. A separate order accompanies this memorandum opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: June 14, 2010